IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Jordan M. Albright, | : | |
| | : | Case No. 1:26-cv-344 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting Defendant's Motion to |
| University of Cincinnati, | : | Dismiss and Denying Plaintiff's Motion |
| | : | for Leave to File Second Amended |
| Defendant. | : | Complaint |

This matter is before the Court on the Motion to Dismiss filed by Defendant University

of Cincinnati ("UC") and the Motion for Leave to File Second Amended Complaint filed by

Plaintiff Jordan M. Albright.  (Docs. 7, 9.)  Albright is suing UC for race and sex discrimination

after he was denied admission into a UC graduate program.  UC is moving to dismiss his First

Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).  Because

Albright has not pleaded facts that give rise to an inference of intentional discrimination in either

the FAC or his proposed Second Amended Complaint ("SAC"), the Court will **GRANT** UC's

Motion to Dismiss and **DENY** Albright's Motion for Leave to File SAC.

I.      **BACKGROUND**

The Court assumes the truth of the well-pleaded factual allegations in the FAC and the

proposed SAC for purposes of the pending Motions.

A.      **Facts Alleged in the First Amended Complaint**

Albright, an African American male, applied to UC's graduate program in school

counseling on January 13, 2026.  (Doc. 5 at PageID 43, 45–46.)  He received an email

confirmation from UC that his application was complete on January 15, 2026.  (*Id.* at PageID

1

43.)  Albright had been previously enrolled as a student at UC, and he had prior "military service, leadership experience, and exceptional academic achievement." (*Id.* at PageID 43–44, 46.)  Thereafter, on an unspecified date, Albright was informed by the UC admissions office that his application could not be located in the UC system. (*Id.* at PageID 45.)  But the UC admissions portal indicated that his application had been submitted and marked complete. (*Id.*)  Also at an unspecified time "[d]uring the admissions process," a UC senior admissions counselor called Albright and asked about his reasons for applying to the program. (*Id.* at PageID 46.)  "[T]he call ended following discussion of [his] background." (*Id.*)  Albright later received a written letter indicating that his application had been reviewed by faculty members and his admission was denied. (*Id.*)

UC encouraged Albright in the denial letter to apply to another program. (*Id.* at PageID 47.)  He had not received similar guidance when he had been previously enrolled in the sports administration program. (*Id.*)  Albright also alleged vaguely that "the program demographics already reflect significant sex imbalance." (*Id.*)

Albright filed an administrative complaint with UC's Office of Equal Opportunity ("EO Office") on April 5, 2026 requesting "an investigation and disclosure of discriminatory admissions practices." (*Id.* at PageID 43–44.)  However, the EO Office specialist told Albright that he would have to provide evidence of a policy violation or discriminatory discrepancies within the graduate school counseling program. (*Id.* at PageID 44.)  The EO Office did not indicate that it would conduct factfinding, contact the decisionmakers, or undertake an investigation. (*Id.*)  Finally, the EO Office specialist did not give Albright the formal complaint form to complete until one week after his initial consultation. (*Id.*)

2

**B.**     **Facts Alleged in the Proposed Second Amended Complaint**

The proposed SAC adds a few new facts and clarifies the dates of some events, but otherwise repeats the core allegations of the FAC.  Albright talked to Scott Pena, a senior graduate admissions counselor for UC, on January 14, 2026 and informed him that he was an African-American male interested in serving underprivileged communities.  (Doc. 8-1 at 70–71.)  They also discussed that he was a former UC student.  (*Id.* at PageID 71.)  Albright asserts that he experienced difficulties in communicating with Pena after that first phone call, including that his "inquiries concerning the application frequently went unanswered."  (*Id.*)  On March 9, 2026, a woman in the Office of Graduate Admissions called to tell Albright that his application could not be found in the UC admission system.  (*Id.* at PageID 70.)

On an unspecified date, but presumably before he received the admissions denial, Albright and a woman he describes only as a female witness visited UC in person to ask about the inconsistent information he had received about his application status.  (*Id.* at PageID 71–72.)  He asserts that the UC personnel he spoke with were "dismissive, declined to provide meaningful assistance regarding the application status, and redirected Plaintiff between offices without resolving the issue or providing clarification previously requested."  (*Id.* at PageID 72.)  The female witness, conversely, "was treated courteously and provided responsive communications by staff."  (*Id.*)

On April 3, 2026, Albright received notice that his application had been reviewed by UC faculty and was denied.  (*Id.* at PageID 70.)  Albright asserts that his application process had departed from UC's ordinary procedures:

> Upon information and belief, completed applications submitted through the University of Cincinnati admissions portal are ordinarily tracked through standardized administrative procedures designed to preserve accurate submission

records, application status information, reviewer access, and admissions determinations.

Plaintiff alleges that the conflicting representations concerning the submission, tracking, review, and denial of Plaintiff's application materially departed from ordinary admissions processing and application-tracking procedures.

(*Id.* at PageID 70–71.)

## C.     Procedural Posture

Albright filed his initial Complaint against UC on April 6, 2026.  (Doc. 1.)  UC filed a Motion to Dismiss on April 24, 2026.  (Doc. 4.)  Albright responded by filing the FAC on April 27, 2026 as is permitted by Federal Rule of Civil Procedure 15(a)(1)(B).  (Doc. 5.)  Albright asserts two claims for relief in the FAC: (1) race discrimination in violation of Title VI, 42 U.S.C. § 2000d *et seq.* and (2) sex discrimination in violation of Title IX, 20 U.S.C. § 1681.

UC then filed the pending Motion to Dismiss the FAC.  (Doc. 7.)  In response, Albright filed a Memorandum in Opposition to the Motion to Dismiss and a Motion for Leave to File the proposed SAC.  (Docs. 8, 9.)  Albright would assert the same two claims for relief in the proposed SAC.  Finally, UC filed a Reply in support of its Motion to Dismiss and a Memorandum in Opposition to Albright's Motion for Leave to File the proposed SAC.  (Docs. 10, 11.)

## II.     STANDARDS OF LAW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To withstand a dismissal motion, a complaint must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Courts do not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face."  *Id.* at 570.  "A claim has

4

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A district court examining the sufficiency of a complaint must accept the well-pleaded allegations of the complaint as true. *Id.*; *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014).

Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleading only with the written consent of the opposing party or with the Court's leave. A motion for leave to amend is addressed to the discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In exercising its discretion, a district court "should freely grant leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But a district court may deny leave to amend where it appears that doing so would be futile. *Foman*, 371 U.S. at 182.

## III. ANALYSIS

### A. Count I—Violation of Title VI

Albright alleges in Count I of his FAC and the proposed SAC that UC denied him admission into the graduate program for school counseling because of his race in violation of Title VI, 42 U.S.C. § 2000d *et seq.* UC contends that Albright has failed to state a claim upon which relief can be granted in either the FAC or the proposed SAC. Title VI prohibits any person from being "excluded from participation in, [ ] denied the benefits of, or [ ] subjected to discrimination under any program or activity receiving Federal financial assistance" on the basis of "race, color, or national origin." 42 U.S.C. § 2000d. Universities receiving federal financial assistance are governed by Title VI. 42 U.S.C. § 2000d-4a(2)(A). "[P]rivate individuals may sue to enforce § 601 of Title VI and obtain both injunctive relief and damages." *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001). Title VI "prohibits only intentional discrimination." *Id.* at

280.

To state a Title VI claim for relief sufficient to withstand a motion to dismiss, "a plaintiff must plead facts that establish discriminatory intent." *Thompson v. Ohio State Univ.*, 990 F. Supp. 2d 801, 816 (S.D. Ohio 2014). The Court agrees with UC that Albright failed to plead facts that are sufficient to raise an inference that UC acted with discriminatory intent. Albright has alleged at most that he is African American, that UC knew he was African American, and that UC denied him admission to the graduate program. But Albright has not alleged any facts that suggest that UC denied Albright's application *because* he was African American. For example, he does not allege facts that would establish that he was more objectively qualified than non-African American applicants who were admitted to the school counseling program. He does not allege that any person at UC made racially-derogatory statements. In fact, he asserts that he did not have "comparable administrative difficulties in prior institutional interactions" when he was previously enrolled at UC. (Doc. 8-1 at PageID 71.) This allegation weighs against finding an inference that UC harbored discriminatory animus against him because he was African American.

Albright asserts that discriminatory animus can be inferred from the conflicting information he received about the status of his application. Specifically, he points to his allegations that he received confirmation that his application was complete, then a phone call stating it could not be found in the admissions system, and finally a communication that his application had been reviewed and denied. But an anomalous communication or administrative error, without more, does not suggest discriminatory intent. And Albright does not dispute that his application ultimately was considered on the merits by UC faculty.

Albright also appears to suggest that racial animus can inferred from the way UC's EO

Office handled his administrative complaint after his application for admission was denied. Essentially, he asserts that UC acted unfairly and in a discriminatory manner because the EO Office "placed the burden of developing the factual record" on him.  (Doc. 5 at PageID 44; *see also* Doc. 8-1 at PageID 75.)  But Albright does not allege facts that would establish that UC handled his complaint differently than it handles other complaints.  The Court simply cannot infer discriminatory intent from these allegations.

In sum, Albright's allegations amount to a claim that UC denied him admission *and* he is African American.  He does not allege sufficient facts to state a plausible claim that UC denied him admission *because* he is African American.  The Court will dismiss the Title VI claim in the FAC and deny him leave to amend to assert the Title VI claim in the proposed SAC.

**B.      Count II—Violation of Title IX**

Albright alleges in Count II of the FAC and the proposed SAC that UC denied him admission into the graduate program for school counseling on the basis of his sex in violation of Title IX, 20 U.S.C. § 1681.  UC again argues that Albright has failed to state a claim upon which relief can be granted in either the FAC or the proposed SAC.

Title IX generally prohibits any person from being "excluded from participation in, [ ] denied the benefits of, or [ ] subjected to discrimination under any education program or activity receiving Federal financial assistance" on the basis of sex.  20 U.S.C. § 1681(a).  Title IX is modeled after and parallel to Title VI, except that it prohibits sex discrimination and applies only in educational programs receiving federal funds.  *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998).  The Supreme Court has described Title IX as prohibiting "intentional sex discrimination."  *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).  "To state a disparate treatment claim under Title IX, a plaintiff must show that [he] was excluded from a

program which receives federal financial assistance and that defendants discriminated against plaintiff on the basis of sex." *Lawtone-Bowles v. Franklin Univ.*, No. 2:24-CV-4091, 2025 WL 2314760, at *5 (S.D. Ohio Aug. 12, 2025) (citing *S.C. v. Metro. Gov't of Nashville*, 86 F.4th 707, 714 (6th Cir. 2023)). The denial of a person to a graduate school that receives federal funds on the basis of his sex would constitute a violation of Title IX. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 680 (1979), *criticized on other grounds*, *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 369 n.1 (2025).

UC moves to dismiss on the basis that Albright has not alleged facts that, if true, would establish discriminatory intent. Similar to the Title VI claim, the bulk of Albright's allegations in the FAC and the proposed SAC simply assert that UC denied him admission to the graduate program *and* he is male. The Court readily concludes that he does not sufficiently allege discrimination on the basis of sex with allegations that he received inconsistent communications about the status of his application or that his application was denied. Albright alleges two additional facts applicable only to his Title IX claim, but neither moves the needle forward to plausibility for purposes of the Rule 12(b)(6) analysis.

First, Albright alleges in the FAC that UC demonstrated discriminatory intent by encouraging him in the letter denying him admission to the school counseling program to apply to a different graduate program. He states that he was not encouraged to apply to a different program when he was enrolled in UC's sports administration program. He does not specify if UC encouraged him to apply to a specific different graduate program or generally to any other UC graduate program. He does not state whether UC gave a reason for encouraging him to so do. Instead, he only asserts vaguely that "the program demographics already reflect significant sex imbalance" but without identifying which program has a sex imbalance or the nature of the

8

imbalance.  (Doc. 5 at PageID 47.)  The Court cannot draw a discriminatory inference from these vague allegations.

Second, Albright asserts in the proposed SAC that the female witness was treated more courteously than he was treated when he inquired at UC's campus about the status of his application.  (Doc. 8-1 at PageID 71–72.)  But Albright does not allege any facts that suggest that the female witness was similarly situated to him in any material respect.  *See Jones v. Johnson*, 707 F. App'x 321, 327–328 (6th Cir. 2017) (stating that a plaintiff states a plausible claim of sex discrimination with allegations that a person with similar qualifications was treated more favorably).[1]  He does not assert whether the witness had an application pending at UC.  He does not assert that she made any specific inquiries to UC about the status of his application or about her application if she also had one pending.  He also does not allege that the people who treated his female witness more courteously were the UC faculty members who reviewed his application and denied him admission to the graduate program.  Albright's allegations about how this female witness was treated are not relevant to make his Title IX claim of discriminatory treatment plausible.

In sum, the Court holds that Albright has failed to allege a plausible claim that UC denied his application to the graduate school counseling program in violation of Title IX because of his sex.  The Court will dismiss the Title IX claim in the FAC and deny him leave to amend to assert the Title IX claim in the proposed SAC.

---

[1]  The Sixth Circuit stated in a 2026 case that a Title IX plaintiff need not allege that "her proffered comparators are similarly situated *in all relevant respects*" at the pleading stage to withstand a dismissal motion.  *Ahmed v. Hamtrack Pub'l Schs.*, 178 F.4th 975, 985–986 (6th Cir. 2026) (emphasis added).  But the Sixth Circuit did not hold that a plaintiff need not plead that the comparator was similarly situated.  In fact, the Sixth Circuit in *Ahmed* cited favorably to *Jones* for the proposition that a plaintiff "can support a plausible inference of discriminatory motive . . . by identifying similarly situated employees outside her protected class who the District treated more favorably."  *Id.* (citing *Jones*, 707 F. App'x at 328.)

**IV.     CONCLUSION**

For the reasons above, UC's Motion to Dismiss (Doc. 7) is **GRANTED** and Albright's

Motion for Leave to File Second Amended Complaint (Doc. 9) is **DENIED**.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge

10